PEOPLES WAYNE COUNTY BANK OF DEARBORN *v.*
HARVEY.

1. JUDGMENT—SUMMARY JUDGMENT—QUESTION FOR COURT TO DE-
TERMINE.

Province of court, on plaintiff's motion for summary judgment,
is to determine judicially whether there is an issue of fact,
which, if resolved in favor of defendant, would preclude a
verdict for plaintiff in whole or in part of his demand.

2. APPEAL AND ERROR — SUMMARY JUDGMENT — AFFIDAVIT — CON-
STRUCTION.

On appeal from summary judgment, statements in affidavit at-
tributed to official of plaintiff bank are assumed to be true
but are construed in the light of actions of the parties and
surrounding circumstances.

3. BILLS AND NOTES—RENEWAL—BREACH OF COLLATERAL AGREEMENT
—WAIVER OF RECOUPMENT.

Execution of renewal promissory note with knowledge that payee
had already breached alleged agreement as to sale of collateral
*held,* a waiver of right to claim of recoupment based on breach
of agreement as to collateral in action on note.

4. EVIDENCE—PAROL—FRAUD—VARYING TERMS OF WRITTEN CON-
TRACT.

Parol evidence that indorser was induced to indorse promissory
note by fraud of payee *held,* not an attempt to vary the terms
of a written contract.

5. SAME—PAROL—ADMISSION TO SHOW FRAUD.

Parol evidence is admissible to show that the execution of a
written instrument was procured by fraud, for the purpose of
invalidating the instrument.

6. BILLS AND NOTES—FRAUD—INDORSERS—WAIVER.

Fraud of plaintiff bank in misrepresenting to indorser that his
indorsement was to be canceled upon execution of mortgage by
maker of note *held,* not waived where indorser did not know
that negotiations as to mortgage had been terminated without
its execution prior to his indorsement of renewal note sued on.

7. SAME—WAIVER OF DEFENSE—NOTICE.

> Execution of renewal note constitutes waiver of previous defense only where defendant had knowledge of the defense at the time of renewal.

8. SAME—FRAUD—PROMISSORY REPRESENTATIONS—MISREPRESENTATIONS AS TO MATERIAL FACT.

> Representations to indorser made by payee which are promissory in character but accompanied by misrepresentations as to an existing material fact constitute defense of fraud in action against indorser on note.

9. JUDGMENT—SUMMARY JUDGMENT—INDORSER—QUESTION OF FACT—FRAUD.

> Summary judgment against indorser of renewal promissory note *held,* properly refused where he raised question of fact as to presence of fraud in procuring his indorsement.

Appeal from Wayne; Webster (Clyde I.), J. Submitted April 4, 1934. (Docket Nos. 14, 15, Calendar Nos. 37,602, 37,620.) Decided June 21, 1934.

Assumpsit by Peoples Wayne County Bank of Dearborn against John G. Harvey and John A. Mercier, jointly and severally, on a promissory note. Recoupment by defendant Harvey. From summary judgment against defendant Harvey and denial of summary judgment against plaintiff, he appeals. From denial of summary judgment against defendant Mercier, plaintiff appeals. Affirmed.

*Wm. Henry Gallagher,* for plaintiff.

*Henry B. Graves* and *Charles H. Hatch,* for defendant Harvey.

*Ernest P. LaJoie,* for defendant Mercier.

BUTZEL, J. Peoples Wayne County Bank of Dearborn, a Michigan corporation, brought suit against John G. Harvey, the maker, and John A. Mercier,

the indorser, of a promissory note for $23,866.28, dated June 15, 1932, and payable to plaintiff in 90 days, with interest. Both defendants denied liability, Harvey filing a separate notice of recoupment. Plaintiff filed a motion, accompanied by affidavits, for a summary judgment against both defendants. The latter in turn filed affidavits in opposition to the motion, and Harvey, in addition, moved for a summary judgment against plaintiff on his claim of recoupment. Affidavits of merits were filed by all the parties. The trial court granted plaintiff's motion for a summary judgment against Harvey, and entered judgment against him for the full amount of the note and interest, but refused to render a summary judgment against Mercier. Harvey appeals from the judgment rendered against him and the disallowance of his claim of recoupment. Plaintiff appeals from the order denying a summary judgment against Mercier.

In order to discuss the alleged errors, we shall briefly review each claim in detail, treating first the granting of the summary judgment against Harvey.

"The province of the court, on a motion for summary judgment, is to determine judicially whether there is an issue of fact which, if resolved in favor of defendant, would preclude a verdict for the plaintiff in whole or in part of his demand." *Baxter* v. *Szucs,* 248 Mich. 672.

(1) In his affidavit filed in opposition to plaintiff's motion for a summary judgment, Dr. Harvey alleges that in September, 1929, he first sought a loan of $10,000 for the construction costs of his home from the Peoples Wayne County Bank of Detroit, of which he was a stockholder, offering 100 shares of the stock of that bank as collateral. He applied to Edwin J. Eckert, with whom he was personally

acquainted, and who was vice-president of the Detroit bank, as well as of its affiliate, the Peoples Wayne County Bank of Dearborn, plaintiff herein. Eckert told him that the Peoples Wayne County Bank of Detroit could not make the loan because it could not take its own stock as collateral, but said that he would have the loan made through its affiliate, the plaintiff bank. The loan was thereupon made by plaintiff, and Dr. Harvey executed a note for $10,000, depositing with plaintiff as collateral 100 shares of his stock in the Peoples Wayne County Bank of Detroit. The note contained the following provision:

"Which property with any other property hereafter deposited in substitution therefor, or in addition thereto, the holder of this note, in default in payment thereof, is authorized to sell at public or private sale with or without notice, and at its option to purchase at such sale, and to apply the proceeds after deducting all expenses of collection and sale, in payment of this note and the balance upon such other of said liabilities as the holder may elect. In case of decline in the value of the securities at any time pledged for any of the above liabilities, the bank shall have the right in its discretion to call for additional security satisfactory to the bank, and upon failure to furnish the same, or if the undersigned becomes insolvent or commits an act of bankruptcy, or if a petition in bankruptcy or an application for the appointment of a receiver, or for the liquidation of the business or assets of the undersigned be filed by or against the undersigned the bank may declare the principal of said note due and payable forthwith, and may sell said collateral property and apply the proceeds in the manner above provided."

On October 31, 1929, Dr. Harvey again visited Eckert. On this occasion he informed Eckert that

he needed an additional sum of $3,000 and would require more money in the future; that he was fearful that as a result of the depression the value of his stock would so depreciate that he could not obtain enough by its sale to properly finance his enterprise. He thereupon requested Eckert to sell at the market value the 100 shares of stock then held by plaintiff as collateral for the loan, and stated that he would sell the remaining 100 shares which were still in his own hands as he needed the money. At that date the stock was selling for $217 a share, so that Harvey could have realized $43,400 for his 200 shares. A movement had been started to merge a large number of banks in Detroit and its vicinity, including the two Peoples Wayne County Banks, into the Detroit Bankers Company, a holding company. Harvey claims that plaintiff was anxious to have all the stockholders in the Peoples Wayne County Bank join in the merger, and that, therefore, Eckert was unwilling to sell Harvey's stock as directed, but replied instead:

"We will not sell the shares of stock. We will protect you in your loan. You are a good customer, depositor, stockholder and former landlord. Of course, we will protect you."

Harvey contends that the bank meant thereby that it would sell his stock before it fell in value below a sum sufficient to pay his indebtedness to the bank, so that in any event his injury would be limited to the loss of the stock. He claims that on the strength of this promise he borrowed an additional $3,000, and deposited his remaining 100 shares as collateral; that further relying upon said promise and pursuant to Eckert's instructions, he subsequently exchanged his 200 shares in the Peoples Wayne County Bank for 300 shares of stock in the Detroit

Bankers Company, and "collaterated" them for his loan. He borrowed additional sums from time to time and successively renewed the notes in their original form, or in combinations, over a period of almost three years, at all times relying upon the alleged promise made to him by Eckert. Both the very first loan and the last renewal of June 15, 1932, embracing all the previous loans, were evidenced by notes which contained the same provision authorizing the bank to sell the stock prior to the due date of the note in the event of its decline in value and Harvey's subsequent failure to furnish additional security at the bank's request. The bank made no such demand, nor did it sell any of the stock pledged, although the stock steadily declined in value. On June 15, 1932, the date of the last renewal note, which is the subject of the present suit, the collateral had a market value of only $3,300, while the note itself was for $23,866.28. The stock of the Detroit Bankers Company continued to decline to the vanishing point, and the Detroit Bankers Company not only went into the hands of a receiver, but Harvey has been called upon to pay a bank assessment of $4,500, or thereabouts. Harvey's claim of recoupment is based on the damages he claims to have suffered by reason of plaintiff's breach of its alleged promise to protect Harvey by selling his stock before it declined in value to a point below the sum necessary to pay his indebtedness to the bank.

We shall limit our discussion to only a few of the questions raised. Although for the purpose of determining whether or not a summary judgment was proper we must assume to be true the statements attributed to Eckert by Dr. Harvey, it does not follow that we must give to that language a different construction than the words themselves indi-

cate, when viewed in the light of the actions of the parties and the surrounding circumstances. We are impressed with the fact that the original note executed by Dr. Harvey authorized the bank to sell the collateral under certain conditions; that when Harvey later communicated his fears to Eckert, the latter reassured him by declaring,

"We will *not* sell the shares of stock. We will protect you in your loan."

We are also impressed by the fact that although the stock declined in value below the amount of the loan, the bank continued to grant extensions of time. Furthermore, on June 15, 1932, although Harvey knew that the value of the stock had declined until it was only worth approximately 15 per cent. of the amount of the loan, and that the bank had as yet made no effort to sell any of the stock, he nevertheless again renewed the note, without making any objection or asserting any claim of recoupment. The conduct of the parties is more in harmony with the construction that Eckert merely agreed not to sell out Harvey's collateral in the event of a decline, than with the construction insisted upon by Dr. Harvey.

However, we shall base our decision on the ground that under the circumstances of the instant case, when Harvey executed the last renewal note under the conditions hereinbefore set forth, with knowledge that the bank had already breached its alleged agreement, he waived his right to any claim of recoupment. In an affidavit made on behalf of defendant Mercier, Harvey states that at the time of the last renewal the stock had declined in market value, to his personal knowledge, so that it was worth much less than the amount of the loans; but that he acted

in the belief that ultimately his shares of stock in the Detroit Bankers Company would become worth more than the total amount borrowed. Harvey could not play fast and loose in this manner. Had he at that time asserted any such claim as he now makes, the bank might have refused to grant the extension, sold out the collateral, and, if it became the purchaser and the stock had later advanced in price as Harvey expected it would, the bank might then have had the full benefit of such an advance.

In *Lilley State Bank* v. *Burkhardt,* 241 Mich. 437, we held that where at the time the maker of the note signed his last renewal, he had knowledge of an alleged fraud in the sale to him of corporation stock for which the original note was given, the fraud, if any, was waived by the renewal. To like effect are *Longacre* v. *Robinson,* 274 Pa. 35 (117 Atl. 408); *Euclid Avenue State Bank* v. *Nesbitt,* 201 Iowa, 506 (207 N. W. 761); *Bosworth* v. *Greiling,* 213 Wis. 443 (250 N. W. 856). Although the alleged defense on which Harvey relies was not a claim of fraud, but rather one of recoupment based upon the breach of a collateral promise by the plaintiff, we believe that the same result should follow, and that Harvey, by renewing his note under the circumstances, waived any claim of recoupment. We are much impressed with the case of *Warren National Bank* v. *Jamieson,* 301 Pa. 45 (151 Atl. 672), where the facts were somewhat similar. In that case the defendant claimed that the bank had agreed to sell 3,000 shares of stock pledged by defendant as collateral, and with the proceeds purchase other stock, which was to be substituted as collateral. The bank failed to make the sale and the stock originally "collaterated" declined very much in value, while that which it was claimed the bank should have pur-

chased appreciated. In a suit upon the promissory note, the defendant set up a counterclaim for breach of the alleged agreement, exceeding the amount of the note sued for, as in the instant case. The court held that in view of the fact that subsequent to the date of the alleged agreement defendant had renewed the note, paid discount on all of the notes, made substantial payments on the principal and pledged additional collateral, he could not set up the agreement antecedent to such renewals as a defense. We believe that the principle involved is correct and that where a defendant, with knowledge of his right to a counterclaim based on the plaintiff's breach of an agreement arising out of the very transaction sued upon, proceeds to give a renewal note without making any objection or asserting any claim of recoupment, he waives all defense arising out of an alleged breach by the plaintiff of the collateral agreement. The court was therefore correct in rendering a summary judgment against Harvey.

(2)  Did the trial court err in denying the motion for a summary judgment against Mercier?

In the affidavits filed by Mercier in opposition to plaintiff's motion for a summary judgment against him, the following facts are alleged: At the time of the first indorsement, Dr. Harvey was dangerously ill in the hospital. He was being pressed by the bank on his loans, and at his request Mercier, who was an intimate friend of Dr. Harvey, went to the bank to intercede for him. Mercier was requested by the bank to indorse Harvey's notes, merely as an interim protection for the bank. The bank stated to him at the time that the indorsement was only to be for a few days; that a mortgage had been arranged on Dr. Harvey's home for approximately $15,000, and that as soon as that mortgage was put

through and Dr. Harvey was able to execute it, Mercier's indorsement would be canceled. Relying upon the above representations, Mercier indorsed Harvey's notes. It is alleged in the affidavits filed by Mercier that, as a matter of fact, at that time Dr. Harvey had not entered into any negotiations whatsoever with the bank in regard to placing a mortgage on his home, and that the representation made to Mercier was therefore absolutely untrue. However, it does appear that subsequently, in December, 1931, Harvey did enter into negotiations with the bank in regard to such a mortgage, and made an application for a mortgage in the sum of $15,000. Instead of granting the mortgage as so requested, the bank changed Harvey's application to one for a mortgage in the sum of $18,000, and made other changes as to important provisions. Upon being informed of these changes in April, 1932, Harvey protested to the bank, and a dispute arose between Harvey and the bank which prevented the culmination of the negotiations, although negotiations were still carried on for some time. However, the mortgage was never executed.

The notes came due on two or three different occasions, and Mercier alleges that on each occasion he made inquiry of the bank concerning the mortgage, and was told that the mortgage would be given as agreed and his indorsement would be released. He also claims that prior to June 15, 1932, when he indorsed the last note, upon which the present suit is brought, the same statements were made to him. A letter written to Mercier by the bank partly substantiates this claim. Mercier claims that in spite of the fact that the situation had been materially altered in the meantime by the change made by the

bank in Harvey's application and the resulting dispute, the bank continued to make the same representations to him, and gave him no notice whatsoever of the true situation. He alleges that if he had received such information he would not have signed the renewal of June 15, 1932; that he was induced to sign the notes as indorser by the fraudulent representations and conduct of the bank; and that he is therefore not liable.

Plaintiff claims that the above defense is inadmissible as an attempt to vary the terms of a written contract. However, it is well established that parol evidence is admissible to show that the execution of a written instrument was procured by fraud, for the purpose of invalidating the instrument. *J. B. Millet Co.* v. *Andrews,* 175 Mich. 350; *Bush* v. *Merriman,* 87 Mich. 260; *Boston Piano & Music Co.* v. *Pontiac Clothing Co.,* 199 Mich. 141; *Rambo* v. *Patterson,* 133 Mich. 655. Plaintiff further contends that even if there were any fraud, it was waived by the signing of the renewal note. There is no merit in this contention, inasmuch as Mercier alleges that he had no knowledge of the true state of facts until some time after the last indorsement. The execution of a renewal note constitutes a waiver of a previous defense only where the defendant had knowledge of the defense at the time of the renewal. *Lilley State Bank* v. *Burkhardt, supra.*

We now come to plaintiff's claim that the alleged representations were wholly promissory in character, and can, therefore, not be the basis of a charge of fraud. It is true that the bank's representations that Mercier's indorsement was to be for only a few days and would be canceled as soon as Harvey executed his mortgage, if taken alone, are merely prom-

issory in character, nevertheless, it also appears, as alleged by Mercier, that the said promissory representations were accompanied by misrepresentations as to an existing fact—the situation between Harvey and the bank in regard to the mortgage. They were also accompanied by a subsequent failure on the part of the bank, although it continued to make such representations, to disclose to Mercier the change that had occurred in the fact situation as a result of its own act.

Assuming all of Mercier's claims to be true, but without now deciding the question of fraud in the absence of further facts, we do believe that there was a sufficient question of fact raised so that Mercier is entitled to a trial of the case at which all the facts may be brought out more fully. The trial court properly refused to grant plaintiff's motion for a summary judgment against Mercier.

The judgment against defendant Harvey is affirmed, with costs to plaintiff. The order denying summary judgment against defendant Mercier is affirmed, with costs from plaintiff to defendant Mercier.

Nelson Sharpe, C. J., and Potter, North, Wiest, and Edward M. Sharpe, JJ., concurred. Fead and Bushnell, JJ., did not sit.