Argued March 11, reversed October 15, 1958

WRIGHT ET UX *v.* HAGE ET UX

330 P. 2d 342

*Norman K. Winslow,* Salem, argued the cause and filed a brief for appellants.

*Quinten B. Estell,* Silverton, argued the cause for respondents. With him on the brief was Bruce Williams, Salem.

Before PERRY, Chief Justice, WARNER, McALLISTER and SLOAN, Justices.

McALLISTER, J.

This is an action brought by Felix T. Wright and Dorothy R. Wright, his wife, doing business as Silver Falls Hatchery, as plaintiffs, against Roy M. Hage and Zelma Hage, his wife, as defendants. The action is upon a promissory note executed by defendants on June 30, 1949 in the sum of $2,297 payable to the plaintiffs.

The answer of the defendants admitted the execution of the note and the non-payment thereof but alleged an affirmative defense of recoupment arising out of the transaction in which the note was given. After both parties had rested, the plaintiffs moved for a directed verdict and the trial judge stated that he intended to allow the motion. However, at the request of the defendants, made pursuant to ORS 18.140①, the

court submitted the case to the jury. The jury returned a verdict for the defendants. Plaintiffs then filed a motion for a judgment in their favor notwithstanding the verdict. The motion was allowed and a judgment was entered in favor of the plaintiffs for the full amount of the note, interest, costs and attorney's fees. From this judgment the defendants appeal.

In the fall of 1946 the plaintiffs were engaged in the hatchery business near Silverton and planned to engage extensively in the hatching of turkey eggs in 1947. The defendants owned a farm in the Waldo Hills district of Marion county and as part of their farming operations raised turkeys.

In order to assure a supply of eggs for the 1947 hatching season, Felix Wright, on three or four occasions during the fall of 1946, urged defendants to buy additional turkeys from plaintiffs to produce eggs for the hatchery. Defendants testified that they were reluctant to make the deal because the "turkey business didn't look too good." However, it was finally agreed that defendants would purchase from plaintiffs 580 turkeys at a price of $4,966 and give plaintiffs their promissory note in payment of the purchase price. Defendants contend that as a part of the same transaction and as part of the consideration for the execution of the note, plaintiffs agreed to purchase all of the eggs from said turkeys and other turkeys which defendants then owned and to pay therefor not less than 25¢ per egg. The payments for the eggs delivered were to be credited on the note. Plaintiffs deny that

① ORS 18.140

\* \* \* \* \*

(2) In any case where, in the opinion of the court, a motion for a directed verdict ought to be granted, it may nevertheless, at the request of the adverse party, submit the case to the jury with leave to the moving party to move for judgment in his favor if the verdict is otherwise than as would have been directed.

they agreed to buy all of the eggs produced by the defendants or to pay more than the market price at the time of delivery.

The plaintiffs delivered the 580 turkeys to defendants late in 1946 and in payment therefor took the defendants' note in the sum of $4,966, dated January 1, 1947, payable to plaintiffs 12 months after date.

The defendants commenced delivering eggs to plaintiffs in February, 1947 and continued until about March 8th when plaintiffs notified defendants that because the market was glutted they would no longer take the eggs. Defendants then attempted to market their eggs elsewhere and were able to sell some eggs to another hatchery at a lesser price. Plaintiffs thereafter again purchased eggs from defendants for a short time but at a price of 22¢ per egg. About April 6, 1947 plaintiffs again refused to take eggs except at the still lower price of 16¢ per egg. Since that price was less than the cost of production and defendants were unable to sell the eggs to other hatcheries for any better price, they killed and sold their turkeys.

The amount due on the note was reduced to $2,797 by credits for eggs delivered to plaintiffs by defendants. Defendants alleged that they would have produced and delivered to plaintiffs an additional 24,000 eggs during the 1947 hatching season and were damaged in the sum of $3,300 by plaintiffs' breach of their agreement to purchase said eggs.

Because of the depressed turkey market, plaintiffs needed money and had to borrow from the Stayton Branch of the First National Bank of Portland. As part of the security for this loan, plaintiffs on June 18, 1947 assigned defendants' note to the bank. On the same date the bank notified defendants of this assign-

ment and directed that future payments on the note be made to the bank.

There is a dispute as to how many times the original note was renewed but it appears from the records of the bank that renewal notes were executed on January 1, 1948, January 1, 1949 and the note sued on dated June 30, 1949. A payment of $500, plus the accrued interest, was made to the bank when the last renewal note was executed. This payment reduced the debt to $2,297.

It is admitted that the note was assigned to the bank before maturity as collateral security under circumstances that made the bank a holder in due course. See ORS 71.027 and 71.052. Plaintiffs contend that their debt to the bank was paid on April 13, 1949 and that thereafter the bank held the note for collection only. Defendants do not concede that the debt due the bank by the plaintiffs was paid on April 13, 1949 although the records of the bank so indicate. We note that the instrument sued on was endorsed in blank by the payees, which seems inconsistent with the claim that the bank was holding the note for collection only. Defendants contend that, in any event, they were never notified that the bank had been paid and in the absence of such notice or knowledge, had a right to assume that the bank continued to hold in due course.

■ The bank retained the last renewal note until January 18, 1952, when it was delivered to plaintiffs. The plaintiffs then held the note but made no attempt to collect it until this action was filed on May 15, 1953. At that time the statute of limitations had apparently barred any independent action by defendants based on the alleged breach of the contract by plaintiffs. The defense was available, however, by way of recoupment,

as the trial court properly ruled. See *Krausse v. Greenfield,* 61 Or 502, 123 P 392 and *Caples v. Morgan,* 81 Or 692, 696, 160 P 1154.

Defendants' brief contains two assignments of error. The first challenges the procedure followed by the trial court in entering the judgment n.o.v. We find that the procedure followed, although irregular, did not prejudice the rights of defendants and deem it unnecessary to consider the matter further in this opinion.

By their second assignment of error, defendants urge that the court erred in entering judgment for plaintiffs for the following reasons:

(1) that the defenses available to the maker against an original note are not waived by renewing it;

(2) that there can be no waiver of the defenses avialable to the maker against the original note if it is renewed while in the hands of a holder in due course;

(3) that the bank held the original and renewal notes as a holder in due course and defendants had no notice that the bank ceased to hold in that capacity if such was the fact; and,

(4) that plaintiffs did not plead waiver in their reply to defendants' plea of recoupment.

The authorities are not in harmony as to whether the execution of a renewal note cuts off valid defenses available against the original note. So far as we have discovered, the only Oregon case in point is *Casner v. Hoskins,* 64 Or 254, 266, 128 P 841, 130 P 55. In that case the court said:

"* * * Thus if the giving of a note was induced by fraud, or there was a failure or want of consideration, all subsequent renewals of the written promise to pay at a stated time a specified sum of

money are open to the same defense. Adams v. Ashman, 203 Pa. 536 (53 Atl. 375). A contrary rule would impose excessive burdens on the maker of a promissory note which had been renewed in compliance with the importunities and threats of an exacting payee."

If the foregoing general rule is applicable in this case, the defendants were entitled to set up their defense of recoupment and the court erred in entering judgment for the plaintiff. When the trial judge advised counsel that he intended to allow plaintiffs' motion for a directed verdict he assigned as his reasons (1) that defendants when executing the renewal note had actual knowledge of their defense to the original note, and (2) that when the note sued on was executed, the bank was holding the note for collection only. It is obvious that the learned trial judge concluded that the Casner case was distinguishable or was contrary to the weight of authority.

The Casner case may be distinguished on the basis that it did not discuss the difference between want of consideration and failure of consideration, either total or partial, and did not mention the element of knowledge of the defenses on the part of the maker at the time of the renewal. In stating the rule in Casner, this court cited only the Pennsylvania case of *Adams v. Ashman*, 203 Pa 526, 53 A 375, decided in 1902. In more recent cases, the supreme court of Pennsylvania has consistently held that the renewal of a note with knowledge at the time of alleged fraud or partial or total failure of consideration estops the maker from asserting such defenses in an action on the renewal note. See *First National Bank of Pittsburgh v. Singer et al.*, 322 Pa 207, 185 A 647 and earlier cases there cited. In the application of the above rule, the Penn-

sylvania cases distinguish between want or lack of consideration on the one hand and total or partial failure of consideration on the other. See *First National Bank of Williamsburg v. Smith,* 132 Pa Super 73, 200 A 215, 218.

It is clear that the Casner rule, especially as applied to a case involving partial failure of consideration, is opposed to the weight of modern authority. A majority of the courts now hold that the renewal of a note with knowledge of a partial failure of the consideration for the original note estops the maker from setting up such defense. *Harrington v. Citizens' Investment & Security Co.,* 160 Ark 320, 254 SW 831; *Hurner v. Mutual Bankers Corporation,* 140 Fla 435, 191 So 831; *American Car Co. v. Atlanta City St. Ry. Co. et al.,* 100 Ga 254, 28 SE 40; *Pioneer Bank and Trust Co. v. MacNab,* 41 Ida 146, 238 P 295; *People's Wayne County Bank v. Harvey,* 268 Mich 47, 255 NW 436; *William Barco & Son v. Forbes,* 194 NC 204, 139 SE 227; *Moran v. Security Bank & Trust Co.,* 181 Okla 181, 72 P2d 814; *First Nat. Bank at Pittsburgh v. Singer et al.,* 322 Pa 207, 185 A 647; *J. B. Colt Co. v. Ellis* (Tex Civ App), 293 SW 629; *Hatten Realty Co. v. Baylies,* 42 Wyo 69, 290 P 561; 5 Uniform Laws Annotated (Part I) Negotiable Instruments, § 28, 401, note 379; Beutel's Brannan Negotiable Instruments Law (7th ed) § 28, 553; 35 ALR 1258 at 1277; and 72 ALR 600 at 607.

Some courts have gone to the extreme of holding that the execution of a renewal note operates as a waiver, not only of known defenses to the original note, but existing defenses which by the exercise of reasonable diligence should have been known. See *Hurner v. Mutual Bankers Corporation,* supra; *Montfort v. Americus Guano Co.,* 108 Ga 12, 33 SE 636; and

Britton on Bills and Notes (hornbook series) § 154, 732 and cases cited.

We find it unnecessary to decide in this case whether the rule stated in Casner should be either over-ruled or limited. In our view, another feature of this case controls our decision.

It is clear that the bank acquired the original note as a holder in due course and continued to hold it in that capacity from June 18, 1947 until at least April 13, 1949. Plaintiffs neither alleged nor offered to prove that when defendants renewed the note on June 30, 1949, they knew that the bank had ceased to hold the note in due course. The records of the bank show that the renewal note sued on was executed under circumstances similar to those surrounding the execution of the prior renewal notes.

■ Failure of consideration is not a defense against a holder in due course. ORS 71.057②. In *Bank of Gresham v. Clarke,* 140 Or 57, 12 P2d 559, it was held that neither fraud nor lack of consideration could be urged as defenses by the maker of a note against a holder in due course who took the instrument as collateral security. See also *Cole v. Vinton,* 142 Or 313, 20 P2d 436.

■ Every holder is deemed prima facie to be a holder in due course. ORS 71.059, and see *River Bros. v. C.F.T. Co., Inc.,* 124 Or 157, 264 P 368.

■ Waiver is generally defined as "an intentional relinquishment of a known right." See *Johnson v. Feskens,* 146 Or 657, 31 P2d 667, 107 ALR 340. Although the adequacy of this definition has been challenged (3 Williston on Contracts (rev ed) 678 et seq.), we think it is sufficient for this case.

---

② ORS 71.057. A holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon.

■ As we have pointed out, defendants were notified that the note had been assigned to the bank before maturity and we think were entitled to assume, until they had notice to the contrary, that the bank continued to hold in due course. Knowledge is an essential ingredient of waiver. There is in this case neither pleading nor proof of knowledge on the part of defendants that the bank had ceased to hold in due course.

The records of the bank disclose that defendants did complain to the bank in January, 1948 of the conduct of the plaintiffs in connection with the purchase of the eggs, although the extent of the complaint is not fully disclosed. Roy Hage testified that he also made demand on plaintiff Felix Wright for an adjustment. This evidence indicates that, given a free choice, defendants might have refused to renew the note and stood on their defenses. We therefore decline to hold, as a matter of law, that defendants are estopped to urge their defense of partial failure of consideration by giving the bank a renewal note under the circumstances existing in this case. If there are cases which would suggest a contrary conclusion, plaintiffs have not called them to our attention.

The judgment for the plaintiffs notwithstanding the verdict is reversed with instructions to enter a judgment on the verdict for the defendants.