Argued February 3, affirmed as modified April 14, 1965

## ATHERTON *v.* COLLINS
### 401 P. 2d 15

*Stuart W. Hill,* Portland, argued the cause for appellant. On the briefs were Gilley, Busey & Hill, Portland.

*Jack L. Kennedy,* Portland, argued the cause and filed a brief for respondent.

Before McAllister, Chief Justice, and Perry, O'Connell, Denecke and Lusk, Justices.

DENECKE, J.

Plaintiff brought an action for a real estate broker's commission in the amount of $1,000. Defendant counterclaimed for $2,000 to recover an alleged secret commission collected by plaintiff and an alleged secret profit made by a third party because of plaintiff's breach of his fiduciary relationship to defendant. The trial court, sitting without a jury, entered a $2,000 judgment for defendant.

Defendant, an Alaskan, employed plaintiff, as evidenced by a real estate broker's employment contract, to sell defendant's Oregon real property for $20,000. Plaintiff secured Mrs. Lee as a buyer and their agreement was evidenced by an earnest money receipt. In a subsequent telegram defendant attempted to rescind this earnest money receipt unless more adequate security was given. Shortly thereafter Mrs. McLain contacted plaintiff and wanted to buy. When told of the prior commitment, she offered to pay up to $22,000. Mrs. Lee agreed to relinquish her rights for $1,000. Mrs. McLain agreed to pay $22,000, of which $1,000 was to go to Lee and $1,000 to plaintiff.

Plaintiff then prepared a second earnest money receipt evidencing an agreement between Mrs. McLain and defendant and stating the purchase price to be $20,000. Plaintiff sent the second earnest money receipt to defendant for signature, stating only that: "I have completely cancelled out the earnest money with the other lady—with her signed statement accept-

ing cancellation." Defendant signed and returned the earnest money receipt.

Defendant's attorney later discovered what had transpired, and defendant at first refused to perform his obligations under the earnest money receipt. Finally, a closure was made and pursuant to escrow instructions approved by defendant, plaintiff and Lee were each paid $1,000 out of the moneys paid by Mrs. McLain.

The above facts are as stated in plaintiff's brief. The trial court concluded that plaintiff fraudulently concealed facts from defendant. The evidence supports this conclusion.

Plaintiff, as agent for defendant, owed him the fiduciary duty of full disclosure. *Prall v. Gooden,* 226 Or 554, 561, 360 P2d 759 (1961); *Parker v. Faust,* 222 Or 526, 530, 353 P2d 550 (1960). This duty was not met in one or more respects. An agent is not entitled to compensation when he breaches his duty to his principal during the performance of his services. 2 Restatement2d 399, Agency § 469. "This is true even though the disobedience results in no substantial harm to the principal's interests and even though the agent believes that he is justified in so acting." (Restatement2d, supra, at 400). Plaintiff is not entitled to a commission for the sale to Mrs. McLain. Plaintiff's argument that he was not defendant's agent in making the sale to Mrs. McLain is contrary to the allegations of his complaint seeking a commission from defendant for the sale to Mrs. McLain.

■ Defendant's counterclaim is for the $2,000 that Mrs. McLain paid plaintiff and Mrs. Lee. Among other defenses, plaintiff contends that defendant waived any rights he might have had by authorizing the payment of these moneys by approval of the

escrow instructions at a time when he knew all the facts. Defendant explained his conduct as follows: After the controversy arose, plaintiff recorded his employment contract and the various earnest money receipts. These were regarded by the title insurance company as a cloud upon the title. Mrs. McLain had a binding contract with defendant to receive marketable title. Plaintiff would not remove this cloud until he and Mrs. Lee received their $2,000.

We agree with the trial court that this does not amount to a waiver.

The concept of waiver is elusive. In some forms it is akin to accord and satisfaction; it has elements of election of remedies; it is said to be a matter of intention, yet some conduct is held to amount to a waiver regardless of the intention of the parties. See Note, 34 Mich L Rev 384 (1936).

*Anderson v. Laws,* 176 Or 468, 159 P2d 201 (1945), illustrates some of the problems. Plaintiff sued for damages alleging defendants had fraudulently induced him to purchase an interest in defendants' business organization. We held: "[T]hat the performance of work for the corporation or the defendants and acceptance of wages by the plaintiff after his discovery of the fraud amounted to no more than the affirmance of the contract [and was not a waiver]." (176 Or, supra, at 473). However, after knowledge of the fraud, plaintiff had entered into a contract with defendants whereby plaintiff's stock was to be sold and if it were not, the business was to be dissolved and plaintiff was to receive first moneys upon liquidation until he had recovered his purchase price. We held this was a "compromise agreement" and amounted to a waiver. Accord, *Dorr v. Janssen,* 233 Or 505, 378 P2d 999

(1963). In those cases it appears from the subsequent agreements that the parties entered into them to make adjustments of their former rights and obligations because of one party's claim of fraud. Nothing similar is present in this record.

In *Wright v. Hage,* 214 Or 400, 330 P2d 342 (1958), noted at 38 Or L Rev 276 (1959), plaintiff brought an action upon a note; defendant alleged an affirmative defense of recoupment upon the ground that the note was given as defendant's performance in a contract which had been breached by plaintiff; plaintiff contended that the breach was waived. The facts were that plaintiff pledged defendant's note to a bank as collateral in such a way that the bank was a holder in due course. Defendant was notified to make payments to the bank. After plaintiff breached the contract, defendant executed renewal notes to the bank; defendant was obligated to the bank on the note because as a holder in due course it took free of the breach of contract defense. Without notice to defendant, plaintiff paid his obligation to the bank and received defendant's renewal note which he left with the bank for collection. Defendant then made a partial payment and gave another renewal note; plaintiff claimed that these acts constituted a waiver. The court held that there was no waiver because defendant made the payment and executed the second renewal note under the belief that he was obligated to the bank. The opinion is written largely in terms of negotiable instrument law; however, it is similar to this case in that after knowledge of the defense of breach of contract defendant made payments inuring to plaintiff's benefit and gave a renewal note, all under the belief that he was obligated to a third party, the bank. Here, defendant agreed to payments to plaintiff in order to

perform his contract with a third party, Mrs. McLain, under the belief that he was so obligated.

*Bytovetski v. McDuff's Estate,* 54 RI 207, 171 A 923 (1934), illustrates the same principle in a setting more similar to the present one. Defendant held a mortgage securing a construction loan; plaintiff had a second mortgage. Defendant induced plaintiff, by falsely representing that the title was clear of other encumbrances, to purchase defendant's interest at a foreclosure sale. After plaintiff had entered into the contract of purchase he contracted to sell to a third person. He then learned of the fraud, but nevertheless completed the contract of purchase with defendant. The court held plaintiff had not waived his right of action for damages for deceit.

■ The $1,000 paid to plaintiff by Mrs. McLain is owed to defendant. "It is well-nigh axiomatic that an agent in dealing with the property of his principal cannot acquire for himself a secret profit as against his principal; that whatever he receives in the transaction of his principal's business belongs to that principal and that he should faithfully account to the latter for all that the agent has thus received." *Stone v. Leonard,* 120 Or 427, 437, 251 P 299 (1927).

The remainder of the counterclaim concerns the $1,000 paid to Mrs. Lee by Mrs. McLain. The payment or promise of payment of this sum was unknown to defendant; however, as it was paid to Mrs. Lee, it does not represent a secret profit to plaintiff. We hold it was not otherwise an element of defendant's damages. The first earnest money receipt created a right in Mrs. Lee to purchase the property. Defendant wanted Mrs. Lee's right cancelled and wanted to accept the benefits of the contract with Mrs. McLain. All the

testimony was that in order to accomplish these two ends, Mrs. Lee had to be paid $1,000. Plaintiff did not disclose this to defendant when he sent the second earnest money receipt to be signed by defendant; however, the evidence is that if this had been disclosed Mrs. Lee would have continued to demand $1,000.

The judgment is modified by reducing the amount by $1,000.