LILLEY STATE BANK *v.* BURKHARDT.

BILLS AND NOTES—FRAUD—WAIVER.

Where, at the time the maker of a note signed the last renewal he had knowledge of alleged fraud in the sale to him of corporate stock, for which the original note was given, the fraud, if any, was waived, and, therefore, is not available to him as a defense to an action on the renewal note by the holder.

Error to Washtenaw; Sample (George W.), J. Submitted October 4, 1927. (Docket No. 9.) Decided January 3, 1928.

Assumpsit by the Lilley State Bank against John Burkhardt on a promissory note. Judgment for defendant. Plaintiff brings error. Reversed, and judgment ordered entered for plaintiff.

*Wood & Rathbun,* for appellant.

*A. J. Sawyer* and *John P. Kirk,* for appellee.

CLARK, J. On January 9, 1922, defendant purchased shares of the capital stock of Southern Oil & Land Company. By agreement between the company and the plaintiff bank the note for the purchase price was made to the bank. On March 4, 1922, defendant purchased more of the shares and again his note was made to plaintiff. On September 18, 1922, a renewal note was given for the total of both of the notes, $1,850. Another renewal note was given on July 13, 1923, which was taken up on October 18, 1923, by a new note of defendant for $1,850, which note is sued upon. Defendant gave notice under his plea that the notes had been procured from him by fraud of

Bills and Notes, 8 C. J. § 658.

the Southern Oil & Land Company, at least, and that the plaintiff bank is not a holder in due course. One of plaintiff's contentions is that defendant has waived his right to make such defense. Defendant had verdict and judgment. Plaintiff brings error.

When defendant gave the last renewal note he had knowledge of the averred fraud. We think this is established beyond question. Mr. George H. Church of Tecumseh was sent in March, 1923, by defendant and others to inspect the company's properties and business which were in Arkansas, and to report. Defendant heard his report about March 25, 1923, of which defendant testified:

"*Q.* Now, Mr. Burkhardt, did you, after hearing Mr. Church's report and discussion in regard to the condition this company was in, did you then buy bonds?

"*A.* Yes, sir.

"*Q.* And why did you buy those bonds?

"*A.* They claimed it was the only salvation. We had to make—company had no more money. It had to have some money and we had to put in more.

"*Q.* Well, the claim was at that time that so far as stock was concerned, the stock was worthless and the only way you could save yourself was to buy bonds; is that it?

"*A.* That is the way I considered it. It was worthless."

In August, 1923, defendant's certificates of stock, which had been left at the bank, were forwarded to him, of which he testified:

"*Q.* And I think you said a few moments ago they kept it until it wasn't worth anything and then sent it back to you?

"*A.* Yes, sir. After it was dead they sent it to me."

We need not review the evidence further, finding nothing therein to make an issue on this question. It is true that defendant and other stockholders, including

many reputable and well-known men, hoped to save the enterprise by the issue of bonds, but such hope takes nothing from the knowledge of the facts. Counsel are in accord that if, when defendant gave the last renewal note, the note sued upon, he had knowledge of the averred fraud, he has waived his said defense. We conclude that it has been waived. Whether there was in fact fraud is a question not before us. No other question requires consideration. On the motion made by plaintiff, a verdict for the amount due should have been directed.

Reversed, with costs to plaintiff. Remanded for judgment in favor of plaintiff.

FLANNIGAN, C. J., and FELLOWS, WIEST, McDONALD, BIRD, and SHARPE, JJ., concurred.

The late Justice SNOW took no part in this decision.