MEAD v. DETROIT-TRAVERSE REALTY CO.

1. CORPORATIONS—AUTHORITY OF MANAGER.
    Where manager of corporation had apparent authority to ex-
    ecute contract for corporation whereby it secured plaintiff's
    financial interest and personal services, contract, which was
    intended and executed as corporate undertaking, is corporate
    contract, in absence of showing that manager's authorized
    powers were not as broad as his apparent authority.

2. SAME—CONTRACT REPUDIATED AS ULTRA VIRES MUST BE REPU-
    DIATED IN TOTO.
    Corporation may not take benefits of contract made in its behalf
    by manager and then escape liability on ground that contract
    was ultra vires, but, if repudiated, it must be repudiated in
    toto, and restoration made of what it received.

3. WAIVER—LACHES—SPECIFIC PERFORMANCE.
    Where plaintiff tendered back stock within period provided in
    contract for its return if he was dissatisfied, demanded return
    of his stock, and repeatedly disclaimed ownership of defend-
    ant's stock, he was not guilty of laches, and therefore did not
    waive his rights under contract.

4. APPEAL AND ERROR—EQUITY—JURISDICTION.
    Where question of jurisdiction of equity was not set up in
    pleadings, objection by defendant comes too late after filing
    cross-bill, hearing on merits, and relief on both bill and cross-
    bill.

5. EVIDENCE—BOOKS OF ACCOUNT—ACCOUNTING.
    In determining amount due plaintiff as commissions on sales of
    real estate, defendant's books of account, kept in regular
    course of business, should prevail over plaintiff's testimony,
    which was not very satisfactory.

Appeal from Lenawee; Sampson (Jacob N.), J.
Submitted June 6, 1930. (Docket No. 66, Calendar
No. 34,748.) Decided October 3, 1930.

Bill by Richard T. Mead against Detroit-Traverse Realty Company, formerly F. J. Wilson & Company, a Michigan corporation, for specific performance of a contract involving personalty. Cross-bill by defendant setting off advancements. From a decree for plaintiff, defendant appeals. Modified and affirmed.

*Baldwin & Alexander* and *Wood & Rathbun,* for plaintiff.

*Howard A. Donnelly,* for defendant.

FEAD, J. In 1925, defendant, then known as F. J. Wilson & Company, was operating in real estate in the city of Detroit. F. J. Wilson was principal stockholder, president, general manager, and in complete charge of the corporation. He sought to interest plaintiff in the company and to secure his services in its operations. After some negotiations, he made plaintiff a written proposal, on April 2d, signed by himself, which plaintiff refused on the ground that he would contract only with the corporation, not with Wilson personally. Instead of rewriting the proposal, Wilson added, after his own signature, the words, ''The above offer is guaranteed by this company,'' and appended the corporation signature by himself as president, whereupon plaintiff signed the acceptance. In substance, the agreement provided that plaintiff should exchange 1,000 shares of Peerless Portland Cement Company stock and a land contract for 100 shares of F. J. Wilson Company stock; that on August 1st, or within ten days thereafter, upon written notification by plaintiff that he was not satisfied with the investment, the cement stock and contract should be returned to him and he should give back the Wilson

stock; that plaintiff should apply for a license to sell real estate and should enter the service of Wilson & Company on a basis of drawing account and commissions until August 1st, and should then determine whether he would continue the relationship.

The transfer of properties was completed the same day. Before August 1st, plaintiff orally demanded of Wilson return of the cement stock and contract, and on July 30th gave written notice of such demand, directed to the corporation and delivered to Wilson, with tender back of the stock he had received. Wilson had sold the cement stock and contract, told plaintiff they would be paid for in money, and directed him to hold the Wilson stock until the corporation could pay him. In August or September plaintiff further notified the assistant treasurer of defendant of his demand, and later in the year discussed it with a director.

In October, by way of a stock dividend, a certificate for 150 shares was issued to plaintiff, and his original certificate returned to the corporation. In the spring of 1926 the certificate was converted into two, for 100 and 50 shares respectively, the latter of which was assigned to Wilson to secure a debt to him from plaintiff. On both occasions plaintiff disclaimed ownership of the stock, and Wilson urged him to hold it until the corporation could pay him. Plaintiff qualified as a real estate agent for defendant, worked for it until spring of 1926, making some sales, and ran a considerable money account with defendant.

This suit was begun in 1928. Plaintiff claims the delay in bringing action was caused by his having lost the contract for a time. In the bill plaintiff prayed money damages for nonreturn of his cement stock and land contract. Relief in connection with

another land contract was also asked in the bill, but that phase of the case has been eliminated by the decree against plaintiff thereon and from which no appeal was taken.  Defendant, by cross-bill, asked money judgment against plaintiff for the balance of his account.  Plaintiff had decree for the value of the cement stock and contract, less his debt to defendant.  Defendant appealed.  ·

Defendant's principal point is that the contract did not bind the corporation because it was personal to Wilson, the corporation had no benefit from it, Wilson had no authority to make it on behalf of the company, and, as a contract of guaranty, it was *ultra vires* of the corporation.

The testimony was undisputed that the contract was intended and executed as a corporate undertaking.  It was for the benefit of the corporation in securing plaintiff's financial interest and personal services.  We need not discuss whether the stock received by plaintiff was Wilson's own property, or belonged in fact to the corporation and was carried in Wilson's name to circumvent the blue sky law, because Wilson made the trade and received plaintiff's stock and contract as the representative of and for the corporation.  If, as was intimated but not clearly shown, Wilson appropriated them to his own use, the misappropriation could not affect plaintiff's rights.  Wilson had apparent authority, as manager and in full charge of the corporation, to execute the contract for defendant, and there was no counter showing of resolution of the board of directors or otherwise that his authorized powers were not as broad as his apparent authority.  The agreement was clearly a corporate contract.  ·

The record does not contain defendant's articles of association, and we cannot say whether the con-

tract was *ultra vires*. If it was, defendant cannot escape its obligation without repudiating it *in toto* and giving back to plaintiff what it had received from him. The doctrine of *ultra vires* is not a source of profit to corporations.

Defendant's other contentions require little discussion. Plaintiff's claim is not for rescission of the original trade, but is in the nature of action for specific performance of the contract to trade back. He was not guilty of laches, as he made demand and tender within the contract period and held himself ready, at any time, to return the stock he had received. His repeated disclaimers of ownership of the Wilson stock and the demands upon various officers of defendant for his money negative the claim that he waived his rights under the contract by taking new certificates of stock for the original. The question of the jurisdiction of equity, now raised by defendant, was not set up in the pleadings and the objection comes too late after filing cross-bill, hearing on the merits and relief on both the bill and cross-bill.

The decree allowed plaintiff a greater sum for commissions on sales than is shown upon defendant's books of account, kept in the regular course of business, and from which it furnished plaintiff a statement. The testimony of plaintiff upon the account is not satisfactory, and the books should prevail over it.

The decree will be modified by allowing defendant a credit of $4,568, in lieu of the credit provided in the decree, against the value of plaintiff's cement stock and contract as found by the circuit court, and, as so modified, it will be affirmed without costs.

WIEST, C. J., and BUTZEL, CLARK, McDONALD, POTTER, SHARPE, and NORTH, JJ., concurred.