LOUIS JASKOW, Plaintiff, *v.* HARRIMAN NATIONAL BANK AND TRUST COMPANY OF THE CITY OF NEW YORK, Defendant.

Supreme Court, Trial Term, February 28, 1935.

*Niles & Johnson* [*Henry Boynton Niles* of counsel], for the plaintiff.

*O'Brien, Boardman, Conboy, Memhard & Early* [*Davis Asch* and *William J. Butler* of counsel], for the defendant.

DORE, J. Plaintiff sues to recover the sum of $3,030, with interest from July 1, 1931, as damages by reason of his purchase of two shares of the stock of the Harriman National Bank and Trust Company from the defendant (hereinafter referred to as " the bank "), claiming such purchase has been induced by false representations claimed to have been made on the part of the bank by John A. Noble, a vice-president. The action was commenced against the bank and Noble. Noble died before the trial and the action was not revived against his estate.

I find that the stock was purchased by plaintiff in the belief that he was purchasing it from the bank and not from the Harriman Securities Corporation (hereinafter referred to as " the company "); that the stock was purchased in reliance upon false and fraudulent representations made by persons who were officers of the bank and also officers of the company; that instead of *bona fide* bid and asked prices the market for the stock was artificially maintained and known to be so maintained by such officers at the time of making the fraudulent representations.

The company was an affiliate of the bank, organized for the purpose of buying and selling securities; legal title to its stock was in three trustees but the shareholders of the bank were the beneficial owners of the company's stock to the extent of bank stock held by them. At the time of the transactions in question it was entirely legal for the affiliate to buy and sell the shares of its affiliated bank but the bank had no authority to engage as principal in the business of buying and selling its own shares, such traffic being prohibited by the National Banking Act (U. S. Code, tit. 12, § 83).

Plaintiff contends that the sale was made by the bank as principal and that the bank received the proceeds or consideration thereof. On the record before me and within the period during which evidence as to the transactions was received, that is, from January to July, 1931, I reach the conclusion that the plaintiff has failed to sustain the burden of proof to establish that contention. Irrespective of the form of the so-called white " ticket," the consideration or proceeds of the sale was on July 2, 1931, credited to the company.

In addition there are other facts which lead to the same conclusion. No shares of bank stock were ever carried in the bank's portfolio; Kelly, in whose name the stock purchased for the suspense account was held, held the shares as nominee for the company; Columbo testified that the suspense account was a bond department account and that the function of the bank's bond department was to act as agent for customers in the purchase and sale of

securities as a convenience for them; all dividends paid on the shares in the suspense account were received by the company; and in the numerous transactions evidenced by that account there is no record of the bank's making any profit or loss.

Although the specific items which represent charge and credit journal entries in the bank's suspense account were not reflected in the security company's books, they did go to figure balances which were struck and from time to time drawn against by the company.

The purported sale of the stock by the bank and the representations by the persons who were bank officers in respect to the value of its shares were wholly unauthorized, and as against bank depositors and other creditors who concededly had nothing to do with the sale or the fraud in connection therewith, a bank stockholder should not on principle be allowed to recover unless the consideration of the sale passed to the bank itself. The receipt of the proceeds is the only conceivable ratification of the transaction by the bank and this is the basis on which plaintiff in his bill of particulars sought to establish such ratification.

It can never be assumed that an officer of a national bank had authority to transact business in which the bank, by its charter (as restricted by the Banking Act), was expressly prohibited from engaging. (*Alexander* v. *Cauldwell*, 83 N. Y. 480, 486.) The prohibitions of the act are primarily for the security of national banking institutions, that is, for the protection of depositors and other creditors; and if the bank has not received the proceeds of the unauthorized transaction the loss should not be inflicted upon it with the consequent impairment of financial responsibility.

It has been repeatedly held that a national bank, contracting beyond its powers, is not liable for anything beyond what it received. (*Jackman* v. *Continental National Bank*, 16 F. [2d] 728; *Merchants' Bank* v. *State Bank*, 10 Wall. 604, and numerous other cases cited; U. S. Code Ann., tit. 12, Banks and Banking, § 24, note 145.) Assuming, therefore, that the bank, acting through its officers, did itself purport to sell the stock (instead of being a conduit through which the company sold it, as I find on this record), the public policy of the National Banking Act, aimed to protect depositors, would forbid recovery by a defrauded purchaser of the stock as against the bank, unless the bank, with the knowledge of the fraud, retained the proceeds of the sale.

Harriman and his family corporation, the J. A. M. A. Realty Company, and Noble Austin and Williamson held among them at the time of the transaction in question about one-third of the outstanding capital stock of the bank. Manifestly, it was of

vital interest and benefit to them that the price of the stock should not be allowed to drop.

Plaintiff, to support his contention that the sale of the stock was not *ultra vires*, relies on *Lantry* v. *Wallace* (182 U. S. 536), and claims that that case makes the sale "laudable." In that case a stockholder, seeking to escape liability on an assessment on the stock which he had purchased from a national bank, urged that the sale was void under section 83 of the National Banking Act (*supra*). That case merely held that a violation of section 83 will not relieve from liability a bank shareholder who holds a certificate of bank stock and enjoys the rights of a shareholder, since the sale to him by the bank restored to the bank that part of the capital retired by the prior purchase and "to that extent repaired the wrong which might otherwise have been done to the bank's creditors;" *i. e.*, the court was protecting depositors against a defaulting stockholder. The case is not authority for the contention that a defrauded stockholder may recover as against a bank whose officers have engaged in a wholly unauthorized and fraudulent transaction for their own profit or that of a corporation in which they were vitally interested. In such a state of facts, to hold the bank liable would defeat the policy of the National Banking Act that was intended to promote the security and strength of the national banking system.

The case of *Singleton* v. *Harriman* (152 Misc. 323; affd., 241 App. Div. 857) is clearly distinguishable, for there, as the opinion of the learned justice at Trial Term indicates, the court found that the stock had been acquired by the bank, had been sold on its behalf and that the bank had received the proceeds of the sale. Under such circumstances the bank might well be held liable for the misrepresentations made by its officers on its behalf. An examination of the record in the *Singleton* case discloses that the evidence indicating that the stock sold belonged to the Harriman Securities Corporation, and that the latter was credited with the proceeds of the sale, was not nearly as persuasive as the evidence adduced at the trial of this action.

The pleadings shall be deemed to be conformed to the proof with exception to the plaintiff.

Plaintiff has, of course, a good cause of action against the individual officers who perpetrated the fraud, but it is against them as individuals and not as officers of the bank.

Verdict is directed in favor of the defendant, with exception to the plaintiff. Thirty days' stay granted and sixty days to make a case. The clerk is directed to enter judgment accordingly.