## MADISON NATIONAL BANK v LIPIN

1. JUDGMENT—SUMMARY JUDGMENT—FAILURE TO STATE CLAIM—FAILURE TO STATE DEFENSE—COURT RULE.

  A motion for summary judgment based upon the ground that the opposing party has failed to state a claim upon which relief can be granted or that the opposing party has failed to state a valid defense to the claim asserted against him is tested by the pleadings alone (GCR 1963, 117.2[1], [2]).

2. APPEAL AND ERROR—SUMMARY JUDGMENT—GENUINE ISSUE OF FACT—COURT RULE.

  The Court of Appeals considers the pleadings, affidavits, and depositions, admissions and documentary evidence then filed, giving the benefit of every reasonable doubt to the defendant, when reviewing a trial court's determination that summary judgment for the plaintiff should lie, granted upon the ground that there is no genuine issue as to any material fact (GCR 1963, 117.2[3], 117.3).

REFERENCES FOR POINTS IN HEADNOTES

[1] 73 Am Jur 2d, Summary Judgment § 23 *et seq.*

[2] 4 Am Jur 2d, Appeal and Error § 104.

  5 Am Jur 2d, Appeal and Error §§ 617, 727, 853, 1053.

  73 Am Jur 2d, Summary Judgment § 40.

[3, 6] 10 Am Jur 2d, Banks §§ 47–54.

  19 Am Jur 2d, Corporations § 1326 *et seq.*

[4, 7] 19 Am Jur 2d, Corporations §§ 966, 967, 975, 976.

[5] 10 Am Jur 2d, Banks §§ 110–112.

  Responsibility of bank for fraud of officer or agent inducing customer or debtor of bank to enter into transaction with such officer or agent personally or with third person. 117 ALR 389.

  Liability of bank for losses incurred on loans or investments made on recommendation of its officers or employees. 113 ALR 246.

[6] 72 Am Jur 2d, Statute of Frauds § 144.

[7, 8] 73 Am Jur 2d, Statute of Frauds § 397 *et seq.*

[9] 17 Am Jur 2d, Contracts § 238.

  30 Am Jur 2d, Evidence § 1035.

  37 Am Jur 2d, Fraud and Deceit § 70.

[10] 51 Am Jur 2d, Limitation of Actions § 76 *et seq.*

[11] 37 Am Jur 2d, Fraud and Deceit § 409.

[12] 11 Am Jur 2d, Bills and Notes §§ 391, 689, 694.

3. BANKS AND BANKING—PRINCIPAL AND AGENT—SALE OF STOCK—
   BANK OFFICERS—APPARENT AUTHORITY—QUESTION OF FACT.

A genuine issue of material fact is presented as to whether the president and chairman of the board of directors of a bank was acting within his apparent authority as an agent of the bank when he offered to sell shares of the bank's stock, accepting promissory notes in payment, although the bank per se was not authorized to sell such stock.

4. CORPORATIONS—DEFENSES—ULTRA VIRES—STATUTES.

A plea of *ultra vires* is not generally available to a corporation (MCLA 450.1271).

5. BANKS AND BANKING—PRINCIPAL AND AGENT—BANK OFFICER—
   FRAUD.

A bank is responsible for the acts of an officer of the bank if the officer, in the apparent scope of his duties, makes false and fraudulent assertions in reliance upon which a person acts to his injury.

6. FRAUDS, STATUTE OF—BANKS AND BANKING—BANK OFFICER—SALE
   OF STOCK—QUESTION OF FACT.

It is a question of fact whether payment made by a defendant to an officer of a bank was payment to the bank so as to remove the transaction from the statute of frauds, where the officer purported to sell bank stock to the defendant, the stock was never delivered, and such a sale was not authorized.

7. FRAUDS, STATUTE OF—SALE OF STOCK—PARTIAL PAYMENT—SINGLE
   TRANSACTION—STATUTES.

Payments by a defendant of portions of the amounts owing on promissory notes executed by him for purchase of a bank's securities which were never delivered is sufficient part performance to take the transaction out of the statute of frauds if the dealing between the defendant and the bank officer constitutes a single transaction (MCLA 440.8319).

8. FRAUDS, STATUTE OF—BANKS AND BANKING—BANK OFFICER—SALE
   OF STOCK—SINGLE TRANSACTION—QUESTION OF FACT—STAT-
   UTES.

It is a question of fact for jury determination whether dealings between a bank officer and a defendant constituted a single transaction where the officer offered to sell bank stock to the defendant, took promissory notes in return on three occasions, and where the defendant executed renewal notes, and had paid a portion on the notes (MCLA 440.8319).

9. CONTRACTS—EVIDENCE—PAROL EVIDENCE.

> Parol evidence may be introduced to show that the validity of an agreement was impaired by fraud, illegality, duress, mistake, insufficiency of consideration, or failure of consideration, rendering it void or voidable, and also to show that the parties agreed by parol that the writing in question should not become effective until some future day or the happening of some contingency.

10. LIMITATION OF ACTIONS—DEFENSES—FRAUD.

> The statute of limitations is not available as a bar to a defense of fraud, mistake, or absence or failure of consideration, in whole or in part.

11. LIMITATION OF ACTIONS—BANKS AND BANKING—BILLS AND NOTES —DEFENSES—FRAUD—FAILURE OF CONSIDERATION—KNOWLEDGE —CONFIDENTIAL RELATIONSHIP—RELIANCE.

> The affirmative defenses of fraud and failure of consideration are not barred by the statute of limitations if the defendant, in a suit against him by a bank for balances due on notes, can show that he had no actual knowledge of fraud nor any reason to suspect fraud on the part of a bank president because of his confidential relationship with and reliance upon the position of the bank president with whom he was dealing.

12. BILLS AND NOTES—RENEWAL NOTES—DEFENSES—WAIVER— KNOWLEDGE—QUESTION OF FACT.

> The execution of a renewal note constitutes a waiver of a previous defense only where the defendant had knowledge of the defense at the time of the renewal; whether the defendant had such knowledge is a question of fact.

Appeal from Oakland, James S. Thorburn, J. Submitted Division 2 November 14, 1974, at Lansing. (Docket No. 17820.) Decided January 27, 1975.

Complaint by the Madison National Bank against Max Lipin to recover on renewal notes. Summary judgment for plaintiff. Defendant appeals. Reversed and remanded.

*Tony Ferris,* for plaintiff.

*Goldsmith, Yaker & Goldsmith* (by *Hal O. Carroll*), for defendant.

Before: BRONSON, P. J., and D. E. HOLBROOK and V. J. BRENNAN, JJ.

D. E. HOLBROOK, J. Plaintiff, a bank chartered under 12 USC 21 *et seq.,* brought an action to recover on renewal notes against Max Lipin, defendant. Plaintiff moved for summary judgment on the basis that defendant's answer had failed to state a valid defense to the claim asserted against him and that there was no genuine issue of material fact. GCR 1963, 117.2(2) and (3). This motion the trial court granted and entered judgment in favor of plaintiff for the sum of $12,900 plus interest in the amount of $1,662.05, plus costs of $157.60, for a total of $14,719.65. In addition, interest was ordered at the rate of 7% from June 20, 1973.

Motions based upon GCR 1963, 117.2(1) or 117.2(2) are tested by the pleadings alone. *Todd v Biglow,* 51 Mich App 346, 349; 214 NW2d 733, 734 (1974). Interrogatories and depositions are relevant, however, when the ground stated for summary judgment is that there is no genuine issue of material fact. *Id.* In *George E Snyder Associates, Inc, v The Midwest Bank,* 56 Mich App 193, 195–196; 223 NW2d 632, 633 (1974), Judge BRENNAN, of this panel, wrote:

"A motion for summary judgment under GCR 1963, 117.2(3), made before trial has commenced, is not to be granted unless it can be said, giving the benefit of every reasonable doubt to the party opposing the motion, that there is no genuine issue as to any material fact. *Rizzo v Kretschmer,* 389 Mich 363; 207 NW2d 316 (1973); *Rowen & Blair Electric Co v Flushing Operating Corp,* 49 Mich App 89; 211 NW2d 527 (1973). In determining

whether such an issue does indeed exist, a court is required to consider all affidavits filed in the action 'together with the pleadings, depositions, admissions and documentary evidence then filed in the action or submitted by the parties.' GCR 1963, 117.3."

Thus, for our review of the trial court's determination that summary judgment should lie, we review the pleadings, affidavits and depositions. We will give the benefit of every reasonable doubt to defendant. See also *Peoples Wayne County Bank of Dearborn v Harvey,* 268 Mich 47, 49; 255 NW 436, 437 (1934).

In light of the foregoing, the fact that no trial was held and the rule that we view the allegations and asserted claims in the light most favorable to the defendant, the following facts are revealed. On March 24, 1964, defendant was approached by Howard Hamilton, the president and chairman of the board of directors of the Madison National Bank at the time, as to the possibility of purchasing stock in the bank. Defendant stated that he had had similar dealings with Mr. Hamilton while Hamilton was with another bank. To Hamilton's offer, defendant replied that he had no available funds. Hamilton told him that he would accept a promissory note. Defendant signed a note for $5000; Hamilton took a check to defendant; and defendant indorsed the check and returned it to Hamilton. Defendant stated that he did not know how much stock he had purchased or whether it would come from Hamilton, the bank or a third party. Defendant did not determine or inquire as to whether there was a new stock issue authorized by the bank. Two similar transactions later occurred, one a note for $8500 and a second note for $7500. Defendant dealt only with Hamilton and

had no knowledge as to whether any other person knew of the transaction. Defendant never received stock certificates or any acknowledgment that a certificate was being held in deposit. Every three months defendant received renewal notes with the amount left blank. He routinely signed and sent these back to the bank. A bank employee at the time in question, in a deposition, testified that when she received the signed renewal notes from defendant, she gave them to Hamilton. Defendant made a $2500 payment on the principal on the first note and in late 1971 paid $200 plus an amount for interest, which he stated he received from Hamilton while Hamilton was on vacation. Defendant, in his deposition, stated that Hamilton had told him that "I'll handle it when I get back. Take this over there and pay it." Defendant had made no other interest payments and testified he assumed the bank was making these payments. Hamilton left the bank in August 1971 and shortly thereafter defendant was informed that he owed $12,900 on renewal notes.

Plaintiff's complaint stated that defendant had executed and delivered renewal notes of $7900 and $5000 made on August 30, 1971 and August 16, 1971, respectively, and that such were due and owing. Precisely how the original principal of $21,-000, subtracting the payments of $2500 and $200, has become $12,900 is unexplained. In his answer, defendant admitted the execution and delivery of the notes but asserted, by the way of affirmative defenses, that he never received the stock and that the notes sued upon were based upon the representations and warranties of the president of the Madison National Bank, Howard Hamilton. In other words, defendant asserted (1) failure of consideration and (2) fraud. While the precise legal

basis for the trial court's determination is not set out, the following interchange is informative:

"*The Court:* The court is of the opinion that the motion for summary judgment should be granted. The court is of the opinion that the undisputed facts are as to renewal of the notes, and you are bound by the instant writing and parol evidence rule, unless there are other facts which contravene it. There aren't any other facts which are pleaded which would in any way alter that rule of waiver.

"*The court is of the opinion that the defense is a good one, based on the statute, the fact that the statute prohibits sale of its own stock by a national bank.*

"The court is of the opinion that summary judgment should enter. The court will sign an order to that effect.

"*Mr. Carroll [defense attorney]:* Your honor, I am a little unclear. You said you were of the opinion that— you said the 'defense' was a good one? That is our position.

"*The Court:* I misspoke myself. I'm sorry. Strike that. I didn't mean that." (Emphasis supplied.)

Defendant has here appealed the summary judgment and set out three issues. Plaintiff has answered in five issues which do not readily comport with the three set out by defendant. We, therefore, pass upon what we consider to be the relevant issues in this case and set them out in the order we find to be proper.

### Hamilton's authority

Generally, it is said in 10 Am Jur 2d, Banks, § 99, p 103:

"Officers of a bank are but its agents and, like other agents, can bind the bank only when acting within the scope of their authority; *but when a bank opens its doors for business with the public and places officers in*

*charge, persons dealing with them in good faith and
without any notice of any want of authority will be
protected where an act is performed in the apparent
scope of the officer's authority, whether the officer is
actually clothed with such authority or not.* (Emphasis
supplied.)

Also see Anno, *Powers of bank president or vice
president,* 67 ALR 970, 971, and Anno, *Responsi-
bility of bank for fraud of officer or agent inducing
customer or debtor of bank to enter into transac-
tion with such officer or agent personally or with
third person,* 117 ALR 389. 1 Restatement Agency,
2d, § 261, p 570 provides:

"A principal who puts a servant or other agent in a
position which enables the agent, while apparently
acting within his authority, to commit a fraud upon
third persons is subject to liability to such third persons
for the fraud."[1]

§ 262, p 571 states:

"A person who otherwise would be liable to another
for the misrepresentations of one apparently acting for
him is not relieved from liability by the fact that the
servant or other agent acts entirely for his own pur-
poses, unless the other has notice of this."

Notwithstanding the plaintiff's assertion that it
cannot be held liable for the representation and
acts of its agent in selling stock which the bank
per se was not authorized to sell (discussed below),
we rule that the determination of whether Hamil-
ton was authorized to make the representation,
*i.e.,* whether this was within his apparent author-
ity as president and chairman of the board of

---

[1] These Restatement sections were quoted with approval in *Gandy v
Cole,* 35 Mich App 695, 701; 193 NW2d 58, 61 (1971). It is noteworthy
that the first illustration following 1 Restatement Agency (2d), § 261,
p 571, refers to "A, agent of the P Bank."

directors of the bank, is a question of fact—a genuine issue of material fact.

> *Liability of a bank for alleged fraudulent sale of stock by president and chairman of board of directors of the bank when the bank legally could not sell such stock.*

Plaintiff has based much of its argument on the fact that a national bank does not have power to sell its own stock except as permitted by certain provisions of the National Banking Act, which specific provisions are herein inapplicable.[2] In effect, plaintiff is saying that defendant's assertions of failure of consideration and fraud are irrelevant in that the asserted action of Hamilton was *ultra vires* for the bank and thus for him. We find that this approach confuses more than controls. It is undisputed that the bank did not have authorization to sell its stock; however, the question is what liability the bank may have for the attempted sale of such non-authorized, non-existent stock by one of its officers.

As a general proposition, a plea of *ultra vires* is not available to corporations in Michigan. MCLA 450.11; MSA 21.11 (Now MCLA 450.1271; MSA 21.200[271]). See *Vander Meer v Weurding*, 227 Mich 46, 53; 198 NW 828, 830 (1924).[3]

In *Briggs Commercial & Development Co v Finley*, 283 Mich 1, 3; 276 NW 877 (1937), it is said:

---

[2] Particularly relevant is 12 USC 83.

[3] As to the interrelation of a plea of *ultra vires* and the apparent authority of a corporate officer, see *Mead v Detroit-Traverse Realty Co*, 251 Mich 478, 482; 232 NW 355, 357 (1930), where it is concluded that: "The doctrine of *ultra vires* is not a source of profit to corporations." Whether this may be a source of "profit" to the plaintiff is a question of fact. We do note that interest has been paid on these notes throughout their terms. *Cf. Wilkin-Hale Bank v Hernstein*, 48 Okla 628; 149 P 1109; 1 ALR 679 (1915).

"There is no public policy which permits persons or corporations to retain advantages and repudiate the obligations which produce them, except when the transaction is condemned as immoral or by positive statute and the only method of rendering the law effective is to leave the parties where they put themselves. *Every banking statute does not raise a public policy which wholly condemns a transaction.* If it were otherwise, then a customer who borrows more money than the bank is entitled to loan him would not need to pay his debt."[4] (Emphasis supplied.)

We find that we are basically faced with the determination of which of two United States Supreme Court cases applies to the present case: *Awotin v Atlas Exchange National Bank of Chicago,* 295 US 209; 55 S Ct 674; 79 L Ed 1393 (1935), or *Oppenheimer v Harriman National Bank & Trust Co,* 301 US 206; 57 S Ct 719; 81 L Ed 1042 (1937). In the case of *Myers v Canton National Bank of Canton, Ill,* 109 F2d 31, 33 (CA 7, 1940), it is said:

"[T]hat quotations from the decisions and elaboration of the reasons for the distinctions between the facts in the *Awotin* case [citation omitted] and the *Oppenheimer v Harriman Bank* case [citation omitted] would unduly lengthen the opinion without adding one whit to the effect of the Court's holding in the *Oppenheimer* case, which opinion controls the instant case".

We agree. In *Oppenheimer,* the plaintiff had purchased ten shares of bank stock on the basis of false and fraudulent representations of the president and vice president of the bank. Among other statutory provisions at issue was 12 USC 83. Mr.

---

[4] *Awotin v Atlas Exchange National Bank of Chicago,* 295 US 209; 55 S Ct 674; 79 L Ed 1393 (1935) relied upon heavily by plaintiff herein, is cited by Justice BUTZEL in dissent, *Briggs Commercial & Development Co v Finley,* 283 Mich 1, 11; 276 NW 877, 880 (1937), and distinguished by the majority.

Justice Butler wrote, at 301 US pp 211–212; S Ct 722–723; L Ed 1047:

"The bank had power to sell the stock in question whether acquired by it in accordance with or contrary to § 83, and whether the stock belonged to it, the affiliate or a third party. As the stock was fully paid in when originally issued, recovery by the plaintiff would not violate statutory provisions prohibiting reduction of capital. It is to be remembered that plaintiff has fully paid his statutory liability. The bank's liability does not differ from what it would be if, instead of shares of its own stock, it had fraudulently sold to plaintiff bonds or other investment securities. * * * The statutes relied on by defendant cannot reasonably be construed to forbid rescission of fraudulent sales by national banks of their own stock. In the absence of language unquestionably disclosing that purpose, Congress may not be held to have so intended. There is no evidence of that intention. Defrauded purchasers may rescind fraudulent sales by national banks of their own capital stock."[5] (fns omitted)

*Cf. Anderson v Tway,* 143 F2d 95 (CA 6, 1944).

In referring to the authority of a cashier of a bank, the Court in *Merchants' National Bank of Boston v The State National Bank of Boston,* 77 US (10 Wall) 604, 645; 19 L Ed 1008, 1018 (1871), said:

"Corporations are liable for every wrong of which they are guilty, and in such cases the doctrine of *ultra vires* has no application. *Philadelphia & Baltimore R Co v Quigley,* 21 How 202; 16 L Ed 75 (1858); *Green v London Omnibus Co,* 7 CB(NS) 290; 141 Eng 828 (1859); *Life & Fire Ins Co v Mechanic Fire Ins Co,* 7 Wend 31 (NY, 1831).

---

[5] The Court distinguished *Awotin, supra,* fn 4.

Cases cited by plaintiff in support of *Awotin* were decided before *Oppenheimer v Harriman National Bank & Trust Co,* 301 US 206; 57 S Ct 719; 81 L Ed 1042 (1937), *e.g., Jaskow v Harriman National Bank & Trust Co of New York;* 159 Misc 39; 287 NYS 143 (1935).

"Corporations are liable for the acts of their servants while engaged in the business of their employment in the same manner and to the same extent that individuals are liable under like circumstances. *Ranger v The Great Western R Co,* 5 H of L Cas 72 (1854); *Thayer v Boston,* 19 Pick 511 (Mass, 1837); *Frankfort Bank v Johnson,* 24 Me 490 (1844); Ang & Ames, Corporations §§ 382, 388."[6]

Further, the Court said, at 77 US 650; 19 L Ed 1020:

"The directors may limit [t]his authority [of officers] as they deem proper, but this would not affect those to whom the limitation was unknown. *Bank v Norton,* 1 Hill 501 (NY, 1841); *Bank of Vergennes v Warren,* 7 Hill 91 (NY, 1845); *Beers v Phoenix Glass Co,* 14 Barb 358 (NY, 1852); *Farmers and Mechanics Bank v Butchers' & Drovers' Bank,* 14 NY 624 (1856); *North River Bank v Aymar,* 3 Hill 262 (NY, 1842); *Barnes v Ontario Bank,* 19 NY 156 (1859).

"The foundation upon which this liability rests was considered in an earlier part of this opinion. Those dealing with a bank in good faith have a right to presume integrity on the part of its officers, when acting within the apparent sphere of their duties, and the bank is bound accordingly."

In 10 Am Jur 2d, *supra,* § 111, pp 114–115, it is stated: "[I]f a bank officer, in the *apparent* scope of his duties, makes false and fraudulent assertions in reliance upon which a person acts to his injury, the bank is responsible therefor." (Emphasis supplied.) Thus, we can see no reason why the bank should not be liable (if defendant can show: that he dealt with an officer of the bank *as* an officer of the bank, in good faith; that that officer misrepresented the availability of stock allegedly to be sold;

---

[6] As to liability of corporations for wrongs see *Wachsmuth v The Merchants' National Bank,* 96 Mich 426, 430–431; 56 NW 9, 10 (1893).

and that there has been a failure of consideration and fraud committed).[7]

Various other reasons asserted by plaintiff as to why defendant's affirmative defenses should not be allowed.

(1) Statute of Frauds.

MCLA 440.8319; MSA 19.8319 provides:

"A contract for the sale of securities is not enforceable by way of action or defense unless

"(a) there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price; or

"(b) delivery of the security has been accepted *or payment has been made* but the contract is enforceable under this provision only to the extent of such delivery or payment; or

"(c) within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under paragraph (a) has been received by the party against whom enforcement is sought and he has failed to send written objection to its contents within 10 days after its receipt; or

"(d) the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract was made for sale of a stated quantity of described securities at a defined or stated price." (Emphasis supplied.)

---

[7] Further, there remains a serious question as to whether the plaintiff has standing to raise the question of violation of 12 USC, § 83. In Anno, *Construction, application, and effect of provision of Federal statute forbidding national banks to loan on security of, or be purchaser or holder of, its own shares,* 51 ALR 346, 349–350, it is said: "It seems well settled that the United States alone may question the validity of an executed transaction in violation of § 5201, US Rev Stat USC title 12, § 83." Supplemented by Anno, *Noncompliance by bank with statutory provisions relating to loans or discounts as defense to recovery of loan or enforcement of its security,* 125 ALR 1512, 1525. See also 10 Am Jur 2d, Banks, § 295, p 264.

Initially, whether payment was made to an offi-
cer of the bank *for* the bank so as to take the
transaction out from under the statute of frauds is
a question of fact. Further, if the dealing between
defendant and Hamilton constitutes a single trans-
action then there is sufficient part performance to
take it out from under the statute. In *Ter Keurst v
First State Bank,* 271 Mich 259; 260 NW 158
(1935), plaintiff had purchased three bonds from
the First State Bank of Holland. His dealings were
with a cashier of the bank. Plaintiff threatened
suit against the bank claiming that the bonds had
been guaranteed and false representations were
made in their sale. In order to avoid a deluge of
litigation, as the bank had sold a large number of
other bonds of similar nature, the cashier agreed
to repurchase the three bonds. At trial, the court
found that the agreement to purchase the first two
bonds for cash and a third bond within a year
constituted two separate, distinct contracts; that
the delivery and acceptance of the first two bonds
therefore did not affect the contract as to the third
bond, which, not being in writing, was invalid
under the statute of frauds. The Supreme Court,
by Justice BUTZEL, wrote, at 271 Mich 262–263;
260 NW 159:

"If the instant transaction constituted a single, entire
contract for the purchase of all three bonds, as claimed
by plaintiff, the acceptance and payment of the first two
bonds by defendant constituted such part performance
as to take the case out of the statute of frauds. On the
other hand, if there were two separate and distinct
contracts, as contended by defendant, the acceptance of
the first two bonds could not affect the agreement to
purchase the Continental Mortgage bond. The rule is
well stated in *Weeks v Crie,* 94 Me 458, 463; 48 Atl 107;
80 Am St Rep 410 (1900):
    " 'The application of the statute of frauds, in case of

the purchase of a number of articles at the same transaction, may depend upon whether there is one contract or more. The mere fact that a separate price is agreed upon for each article, or even that each article is laid aside as purchased, makes no difference so long as the different purchases are so connected in time or place, or in the conduct of the parties, that the whole may be fairly considered as one transaction. * * * Such purchases may be regarded as entire, though composed of separate parts. But whether such negotiations for separate articles result in one entire contract for the whole, or whether the contract for each remains separate and distinct, may depend upon many circumstances. *It raises a question of fact properly to be passed upon by a jury.* Were the transactions near in time or place, or similar in circumstances? What was the conduct of the parties? Was the seller a merchant engaged in the regular course of his business in his shop or store? What was the language used? What are the proper inferences to be drawn as to the intention of the parties? The answers to these and other like questions solve the problem. If the circumstances are such as to lead to a reasonable supposition that the parties intended that the whole series of transactions should constitute one trade, they may be regarded as one entire contract; otherwise, not.' " (Emphasis supplied.)

Here, there is the implication that the business of purchase of stock was one single transaction; at least, defendant should have the right to attempt to so prove at trial. Once again, whether this is one single transaction or a number of transactions is a question of fact.[8]

(2) Parol Evidence Rule.

Plaintiff in its brief states that:

---

[8] *Cf. Joy v Pagel,* 287 Mich 453, 454; 283 NW 646, 646–647 (1939), where it was said:

"Obviously there can be no hard and fast rule because of which it must be said that every transaction of this character is a 'single transaction' or is not. Instead the character in this respect of each transaction should be determined in the light of the facts by which it is surrounded."

"The only writing involved in this case is the note upon which the plaintiff brings suit and the cashier's checks indorsed by defendant. The language of the note is clear and not ambiguous. It recites receipt of value by defendant (the cash represented by the cashier's check received and evidenced by defendant). The parol evidence rule would prohibit any contradiction of unambiguous terms such as that the defendant did not receive value. *Beaman v Testori,* 323 Mich 194; 35 NW2d 155 (1948). Parol evidence rule is a rule of substantive law, as well as a rule of evidence. *Salzman v Maldaver,* 315 Mich 403; 24 NW2d 161 (1946)."

We disagree. Williston has written:

"The parol evidence rule does not become applicable unless there is an integration of the agreement or contract, that is, unless the parties have assented to a certain writing or writings as the statement of the agreement or contract between them. Accordingly, it may be shown by parol evidence not only that a writing was never executed or delivered as a contract, or that the *validity of the agreement was impaired by fraud,* illegality, duress, mistake, insufficiency of consideration, or *failure of consideration,* rendering it void or voidable; but also (if the writing is unsealed) that the parties agreed by parol that the writing in question should not become effective *until some future day or the happening of some contingency,* if this is not inconsistent with the express terms of the writing." 3 Williston on Contracts (rev ed), § 634, pp 1822–1825. (Emphasis supplied.)[9]

Here defendant has asserted that there was failure of consideration and fraud. He should have an opportunity to bring in evidence to substantiate

[9] Likewise, in 11 Michigan Law & Practice, Evidence, § 209, p 402, it is written:

"Where parties enter into a written agreement, their rights must be controlled thereby, and, *in the absence of fraud or mistake,* evidence of contemporaneous oral agreements on the same subject matter, varying, modifying, or contradicting the written agreement, is inadmissible." (Emphasis supplied.)

these assertions and to show that a condition of the alleged agreement, *viz,* the delivery of stock certificates, has not been fulfilled.

(3) Statute of Limitations.

Plaintiff asserts that the alleged agreement that defendant relied on for defense was made in March of 1964, that the defense was first alleged in 1973, more than eight years later and that this contravenes MCLA 600.5807(8); MSA 27A.5807(8), which provides that the statute of limitation for actions to recover damages on sums due for breach of contract is six years.

The purpose of statutes of limitation is to avoid stale claims; they are "designed to take away one's remedy because of his unreasonable negligence in the assertion of his rights", 20 Michigan Law & Practice, Statute of Limitations, § 1, p 543; they "ordinarily are regarded as statutes of repose which confer no right of action but are available only as defenses", 53 CJS, Limitation of Actions, § 1(b)(1), p 901. A statute of limitation cannot be invoked for the purpose of protecting or shielding anyone in the enjoyment of the fruits of fraud. *Id.* at 904. Whether plaintiff may enjoy the fruits of fraud if defendant's defenses are not allowed remains to be seen. Defendant should, however, have his chance to assert these defenses to avoid the unjust possibility that plaintiff may enjoy those fruits. Moreover, it is said in 53 CJS, *supra,* § 104, pp 1088–1089:

*"[T]he statute of limitations is not available as a bar to a defense of fraud,* or mistake, absence *or failure of consideration,* in whole or in part, failure of plaintiff to perform the terms of the contract sued on, waiver and estoppel, usury, payment, regardless of whether payment was made with money, personal property, or

services, or accord and satisfaction equivalent to payment." (Emphasis supplied.)

In *Rutherford v Rideout Bank,* 11 Cal 2d 479; 80 P2d 978; 117 ALR 383 (1938), plaintiff had continuously consulted with the Rideout Bank in the management and care of her business and financial affairs. She dealt with one Taylor, manager of the bank. Action was brought by plaintiff for fraud in the execution of an agreement and deed. After citing 1 Restatement Agency, §§ 261, 262, pp 570–573, the Court reached the question of limitation of the action in that plaintiff's action for fraud was brought after the three years statute of limitation therefor. The California Supreme Court found that the fraud was, in essence, concealed and that, on the basis of confidential relationship, plaintiff could not be charged with a lack of diligence in making independent investigation either at the time of the alleged fraud or afterwards. The Court found that plaintiff had no actual knowledge of the fraud nor of any fact that would lead her to suspect that a fraud had been practiced upon her, and that coupled with the confidential relationship led to the conclusion that the action was not barred. In the present case, defendant had dealt with Hamilton in the past. He was said to do much banking business with plaintiff. There may be good reason to believe that he relied upon, in good faith, Hamilton's position as president of the bank and chairman of the board of directors; as such, the claim may be substantiated that he had no actual knowledge of fraud nor, in reliance upon Hamilton, any reason to suspect fraud and that a confidential relationship could be shown, as defendant may be said to have relied upon the position of Hamilton in the bank. Thus, the defenses are not barred. Again, this may be a ques-

tion of fact as defendant should be allowed to show his relationship with Hamilton.

(4) Did Defendant Waive His Defenses?

Plaintiff states that:

"As seen from the statement of facts, the defendant knew all the particulars of the alleged fraud at the time that he signed the renewal notes, every three months, including the complaint's Exhibit A and B, dated more than seven years and five months later."

First, a review of the record and the statement of facts does not, certainly, lead inescapably to the conclusion that defendant knew all the particulars of the alleged fraud at the time he signed the renewal notes; rather, this would appear to be a question of fact—one which plaintiff should have to show in order to overcome defendant's assertions of fraud and failure of consideration. Again, we turn to Justice BUTZEL who, in *Peoples Wayne County Bank, supra,* 268 Mich 57; 255 NW 439, wrote: "The execution of a renewal note constitutes a waiver of a previous defense *only where the defendant had knowledge of the defense at the time of the renewal. Lilley State Bank v Burkhardt,* 241 Mich 437; 216 NW 919 (1928)." (Emphasis supplied.) Plaintiff may not come to this Court with the ultimate conclusion that it validly appears that defendant had knowledge. Instead, this alleged fact is subject to proof.

## Conclusion

We here have ruled that the grant of summary judgment was inappropriate as defendant may have valid defenses and there are genuine issues of material fact to be decided. Defendant may not be able to sustain his position in the case at trial;

however, we rule he must have an opportunity to do so, and only then can we deem that he has had his day in court. The case is reversed and remanded for trial. Costs to defendant.

All concurred.