786 F.2d 1166
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
IN RE: QUAEL CORP., a Michigan corporation, f/k/a NAUTILUS
ENTERPRISES, INC., Debtor.
 84-1576
 United States Court of Appeals, Sixth Circuit.
 2/5/86
 
 E.D.Mich.
 AFFIRMED
 ON APPEAL FROM THE U.S. BANKRUPTCY COURT, EASTERN DISTRICT OF MICHIGAN
 Before: MERRITT, JONES, and NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 Blue Cross and Blue Shield of Michigan ('Blue Cross') has appealed from a preliminary injunction that barred it from canceling group health care coverage for employees of a group of companies (the principal one of which is hereinafter called 'Debtor') operating as debtor-in-possession under Chapter 11 of the Bankruptcy Code. Also pending before the court is Debtor's 'Memorandum to Dismiss Appeal as Moot.' We shall allow the injunction to stand.
 
 
 2
 The controversy arose when Blue Cross notified Debtor, subsequent to the filing of Debtor's Chapter 11 petition, that health care coverage theretofore provided to Debtor's employees would be terminated unless Debtor made good certain pre-petition premium payment checks that had been dishonored by Debtor's bank because of the filing of the bankruptcy petition. The checks totaled some $37,000.
 
 
 3
 Contending that Blue Cross was violating the automatic stay provisions of Sec. 362 of the Bankruptcy Code by using the threat of cancellation to collect a pre-petition indebtedness, Debtor sought a temporary restraining order preventing cancellation of the insurance coverage.
 
 
 4
 Although Debtor did not institute an adversary proceeding against Blue Cross and did not cause a summons to be served on Blue Cross (a procedure that probably would have been preferable), Blue Cross promptly entered a special appearance and went on to contest the Bankruptcy Court's jurisdiction over its person on the ground that Blue Cross was not a creditor of Debtor. Debtor, according to Blue Cross, was merely a 'remitting agent' for its employees. Blue Cross argued that:
 
 
 5
 'No contract for the payment of anything exists between debtor and [Blue Cross] in fact and at law. [Blue Cross] is prohibited from so contracting by statute. MCL 550.313; 550.110; MSA 24.603; 24.630.'
 
 
 6
 All contracts for the payment of benefits, said Blue Cross, were 'direct with the individual employees . . ..'
 
 
 7
 The Bankruptcy Court nonetheless granted the restraining order. After conducting an evidentiary hearing, the bankruptcy judge entered a preliminary injunction countersigned by a district court judge. Blue Cross appealed to this court.
 
 
 8
 Debtor moved to dismiss the appeal as moot, and on May 2, 1985, a panel of this court denied the motion without prejudice. Two weeks before the date scheduled for oral argument Debtor filed a 'Memorandum to Dismiss Appeal as Moot,' in effect renewing its motion to dismiss. When the time came for oral argument, however, counsel for Debtor advised us that it no longer contends the matter is moot.[1] We shall therefore address the merits of the appeal.
 
 
 9
 We are not persuaded that Blue Cross is entitled to have the injunction vacated. We do not know--and of course are not called upon to decide--whether Blue Cross has a contract with any other employer in Michigan, but we find no basis for rejecting the finding of the Bankruptcy Court that Blue Cross had at least an implied contract with Debtor to provide coverage for Debtor's employees at Debtor's cost. Debtor's officers understood that such a contractual relationship existed, and it is undisputed that, as Debtor's president testified, '[t]he company [Debtor] pays the total premium for all of the employees.' Although Debtor's president was mistaken in his understanding that Debtor had a conventional policy of insurance, the course of dealings with Blue Cross was such as to make it reasonable for Debtor to believe that Blue Cross was its health insurance carrier. The scope of the insurance coverage to be provided was worked out with Debtor's director of personnel 'speaking on behalf of [Debtor],' as the Blue Cross account representative responsible for this 'customer' testified at the hearing, and the rates for the coverage were provided directly to Debtor through the chairman of its board of directors. Under date of September 26, 1983, shortly before coverage became effective, the account representative sent Debtor's chairman a letter notifying him of the date on which coverage would begin; describing an interim arrangement under which the current benefit level of another employer (for which employees of Debtor had evidently worked earlier) would be duplicated for Debtor's employees '[u]ntil such time that the Group Operating Agreement and financial arrangements are agreed upon and signed;' advising Debtor's chairman that claims incurred after a certain date 'for those employees who transferred to [Debtor] will be charged to [Debtor] experience;' and concluding '[i]t is my personal pleasure to accept [Debtor] in to Blue Cross and Blue Shield of Michigan as a group.' The Bankruptcy Judge was entitled to read this letter as providing support for Debtor's position on the existence of a contract with Blue Cross.
 
 
 10
 Blue Cross argues that it could not have entered into a contract with Debtor to provide coverage for Debtor's employees because the 1939 Michigan legislation that created Blue Cross said 'all contracts for hospital service shall be between the corporation [i.e., Blue Cross] . . . and the persons to receive such service.' MCLA 550.510; MSC 24.630, the Blue Cross Act. (Similar language with respect to medical care was contained in MCLA 550.313; MSA 24.604, the Blue Shield Act.) Blue Cross goes on to cite a 1946 opinion of the Michigan Attorney General as holding that Blue Cross (then known as Michigan Hospital Service) could not contract with the City of Detroit to provide hospital and medical service. OAG No. 0-4679, May 16, 1946 (Report of the Attorney General of Michigan, 1945-46, p. 699). (Blue Cross acknowledges that in 1980 the Michigan legislature passed Public Act 350, repealing the 1939 legislation effective April 3, 1981, but enforcement of the 1980 act had been enjoined at the time Blue Cross entered into its implied contract with Debtor. That injunction has now been dissolved. Blue Cross and Blue Shield of Michigan v. Governor, 422 Mich. 1 (1985).)
 
 
 11
 Assuming, arguendo, that a 1983 contract between Blue Cross and an employer would be ultra vires, it by no means follows that Blue Cross may use the ultra vires doctrine as a sword with which to cut itself loose from the contract it led Debtor to believe had been concluded. 'As a general proposition, a plea of ultra vires is not available to corporations in Michigan.' Madison National Bank v. Lipin, 57 Mich. App. 706, 714, 226 N.W.2d 834, 838 (Mich. Ct. App. 1975). There is no reason to suppose that the public policy of Michigan exempts health care corporations from this general proposition, for 1980 P.A. 350, which reflected the legislature's policy choices regardless of any injunction, expressly provides that '[a]n act of a health care corporation, otherwise lawful, is not invalid because the corporation was without capacity or power to do the act.' MCLA Sec. 550.1207(3).
 
 
 12
 Blue Cross does not seriously challenge the power of the Bankruptcy Court to enjoin cancellation of coverage if a contract, actual or implied, existed between Debtor and Blue Cross, and the Bankruptcy Judge's explanation of the reasons why preservation of the coverage would further the policy objectives of the Bankruptcy Code seems cogent to us. Hospital and medical coverage is a major consideration for most wageearners, and loss of this important fringe benefit could well have made it more difficult for Debtor to reorganize and emerge from Chapter 11 as a viable going concern. Cf. In re Cahokia Downs, Inc., 5 B.R. 529 (Bankr. S.D. Ill. 1980) (cancellation of fire insurance coverage disallowed where maintenance of the coverage was essential to the rehabilitation of the debtor.)
 
 
 13
 The Bankruptcy Court's Order is AFFIRMED.
 
 
 14
 NATHANIEL R. JONES, Concurring.
 
 
 15
 While I concur in the judgment of the court, I write separately to point out, as I think should be done, the statutory bases for upholding this injunction. The parties to this appeal, and the majority opinion, have focused on the difficult question under Michigan law of whether Blue Cross could and did have an actual or implied contract with the debtor. However, the existence of a contract with the debtor does not in itself give rise to a right to an injunction against termination of coverage. Conversely, there are other grounds on which this injunction can be upheld that do not require a contract.
 
 
 16
 The injunction could be justified as an enforcement of the automatic stay statute under 11 U.S.C. Sec. 362(a)(6). That provision stays 'any act to collect, assess, or recover' a pre-petition 'claim against the debtor.' The term 'claim' is broadly defined to mean, inter alia, a 'right to payment.' 11 U.S.C. Sec. 101(4)(A). Blue Cross clearly asserted such a right to payment from the debtor when it informed the debtor that coverage would be terminated if payment was not made. Blue Cross's alleged lack of power to contract directly with the debtor does not preclude the existence of a claim against the debtor, since a right to payment could arise by viewing Blue Cross as a third-party beneficiary of the contract between the debtor and its employees to provide the latter with health care coverage.
 
 
 17
 Even if Blue Cross did not have a claim against the debtor, this injunction is supportable under the lower court's general equitable powers granted by 11 U.S.C. Sec. 105(a). That provision states that '[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.' The court below invoked this section as a basis for its injunction, and properly so. As the majority points out, termination of coverage for the debtor's employees would have hampered if not destroyed the reorganization efforts. A contract with the debtor is not required for such an injunction.
 
 
 18
 The only relevance to this injunction of a contract, actual or implied, between Blue Cross and the debtor, is that such a contract may be deemed 'property of the estate,' which is protected by another provision of the automatic stay statute, 11 U.S.C. Sec. 362(a)(3). This was, apparently, the alternative basis upon which the lower court issued its injunction order, although neither it nor the majority here have explicitly so stated.
 
 
 
 [1]
 If the conduct of Debtor seems to bespeak a certain Hamlet-like quality, so too does that of Blue Cross: while continuing to argue vigorously in this court that it is not a creditor, Blue Cross has donned the hat of a creditor in the Bankruptcy Court and has filed a claim there against Debtor's estate. We presume that both litigants would subscribe to Emerson's dictum that 'a foolish consistency is the hob-goblin of small minds.'